1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   AGK SIERRA de MONTSERRAT, L.P.,          No.  2:15-cv-01280-KJM-DB

12              Plaintiffs,

13        v.                                  ORDER

14   COMERICA BANK, et al.,

15              Defendants.

16

17

18        In this contract dispute between plaintiff AGK Sierra de Montserrat, L.P, and

19   defendant Comerica Bank, plaintiff moves for partial summary judgment of its claim for breach

20   of contract and declaratory relief against defendant.  For the reasons below, the court DENIES the

21   motion.

22   I.      FACTUAL BACKGROUND

23        The following facts are undisputed except where noted.[1]

24   _____

25        [1] Defendant lodges objections to nearly all of plaintiff's proposed undisputed facts,
     primarily arguing that the "'fact' impermissibly characterizes documentary evidence" which
26   "speaks for itself" and the fact is "vague, ambiguous, and overbroad." *See, e.g.*, Def.'s Resp.
     SUF 3–6, ECF No. 48-48.  Defendant often adds, "without waiving these objections, undisputed."
27   *Id.*  For purposes of providing the factual background to the instant motion, the court overrules
     these objections and treats the facts as undisputed.
28                                           1

1    In 2005, Westwood Montserrat, Ltd. ("Westwood") began developing a residential

2    subdivision in Loomis, California known as Sierra de Montserrat, using funds it borrowed from

3    defendant Comerica bank.  Def.'s Statement of Undisputed Facts (SUF) 1, 4, ECF No. 44-14.  As

4    the developer, Westwood recorded a Declaration of Covenants, Conditions and Restrictions

5    ("CC&Rs") for the development, which reserved certain rights for Westwood as the "Declarant"

6    of the CC&Rs,  referred to as "Declarant's Rights."  SUF 2–3.  These rights include, for example,

7    the right to repurchase unimproved lots under certain conditions, and they affect which entity

8    controls the Homeowner's Association ("HOA") and the Design Review Committee for the

9    development.  *See* Opp'n at 5, 6–7.

10    When Westwood later defaulted on its loan obligations to Comerica, Comerica

11    foreclosed and acquired most of the lots in Sierra de Montserrat at a trustee's sale.  SUF 6–7.  On

12    March 19, 2010, Don Murphy, on behalf of his entity Kinetic Homes and his capital partner,

13    Angelo Gordon Real Estate, Inc., offered to purchase 51 lots in Sierra de Montserrat from

14    Comerica for $8,050,000.  SUF 8.  Kinetic and Angelo Gordon Real Estate eventually created a

15    special purpose entity to acquire the lots, named AGK Sierra de Montserrat, L.P. ("AGK"), which

16    is the plaintiff in this action.  SUF 10.  The parties dispute whether Angelo Gordon Real Estate

17    (AGRE) or AGK was the entity negotiating the sale with Comerica, but the fact is not dispositive

18    here; for ease of reference, the court refers here to the buyer as AGK.  *See* Def.'s Response SUF

19    11–12.  On May 17, 2010, AGK entered into a purchase and sale agreement ("PSA") with

20    Comerica and began a 30-day due diligence period.  SUF 11.  During this period, AGK raised a

21    concern that the Declarant's Rights had not transferred from Westwood to Comerica through the

22    foreclosure sale, and therefore Comerica could not transfer those rights to AGK through this sale.

23    *See* SUF 12–15.  AGK communicated this concern to Keith Maruska, the Comerica

24    representative involved in negotiating the sale, SUF 13.  *See* SUF 12, 14, 15 (citing, *inter alia*,

25    Gorry Decl., Ex. F (Maruska Dep.), ECF No. 44-7, at 20–21[2] (Mr. Maruska testifying at

26    deposition that he recalls discussing with Don Murphy and others what rights were transferred in

27

28    _____

[2] Unless otherwise noted, the court cites to the CM/ECF pagination.

1    foreclosure sale). Citing these concerns, AGK requested a price reduction from Comerica. *See*
2    SUF 19 (disputed on other grounds) (citing, *inter alia*, Gorry Decl., Ex. C (Murphy Depo.), ECF
3    No. 44-4, at 32–33). Comerica ultimately reduced the purchase price by roughly $700,000, and
4    the parties entered into the Second Amendment of the Purchase and Sale Agreement (PSA),
5    which reflected the changed sale price. SUF 21 (disputed on other grounds).

6           On June 25, 2010, AGK and Comerica signed a Third Amendment to the PSA,
7    which extended the due diligence period and, according to AGK, also required the parties to enter
8    into an Assignment of Declarant's Rights before closing. SUF 22 (disputed). That same day, the
9    Escrow Specialist at First American Title Company circulated a blank form for Assignment of
10   Declarant's Rights, which did not include an indemnity provision. *See* SUF 23 (disputed on other
11   grounds); Maruska Decl. ¶ 25, ECF No. 48-44. Later that day, after discussing the documents
12   with Comerica's General Counsel, Mr. Maruska emailed AGK's representatives saying Comerica
13   approved the form templates and asked for completed forms ("ready for execution by seller"), so
14   he could have legal counsel do a final review.[3] *Id.* ¶ 25. About an hour later, AGK's
15   representative emailed Mr. Maruska to confirm its "approval within the Due Diligence Period
16   contemplated by . . . the PSA." *Id.* ¶ 26.

17          On June 27, 2010, First American sent Mr. Maruska the closing documents for
18   execution, and informed him that First American would need the executed documents "no later
19   than 8:00 a.m. on June 30, 2010, in order to record the Grant Deed and other documents that same
20   day." *Id.* ¶ 27. The closing documents included an Assignment of Declarant's Rights that did
21   not include the indemnification provision. *Id.* The next day, a representative from AGK notified
22   Mr. Maruska that the buyer listed on the closing documents needed to be changed from "AG
23   Sierra De Montserrat, L.P." to "AGK de Sierra Montserrat, L.P." *Id.* ¶ 28. Later that day, First
24   American sent Mr. Maruska a revised Grant Deed, with the buyer's name changed accordingly.

25   ───────────────
26          [3] The parties differ in their accounts of the subsequent events leading up to the final
     execution of the Assignment of Declarant's Rights, so the court takes the non-movant's evidence
27   as true for the purpose of summary judgment. Defendant submits a declaration by Mr. Maruska
     that recounts his version of events, which the court refers to for the remainder of the description
28   provided here. Maruska Decl., ECF No. 48-44.

*Id.*  First American stated it would "make changes to the rest and send them back out."  *Id.*  On June 29, 2010, at or about 2 p.m., First American sent the remaining closing documents to Mr. Maruska, for execution on behalf of Comerica, including the Assignment of Declarant's Rights, which now included a provision requiring Comerica to indemnify AGK for "any loss, liability, claims or causes of action existing in favor of or asserted by any party arising out of [Comerica]'s position as 'Declarant' under the CC&Rs."  *See id.*; SUF 35; Not. of Removal, Ex. A ("Assignment"), ECF No. 1, at 13.  First American did not inform Mr. Maruska of this change to the document, and Mr. Maruska did not read the documents before signing them, because he believed them to be identical to the previous version he had reviewed, with the exception of the corrected buyer's name.  Maruska Decl. ¶¶ 29–30.

Westwood soon brought three lawsuits against AGK in Placer County, one of which was submitted to arbitration (collectively "the Westwood litigation").  SUF 38.  Westwood filed the first action on September 30, 2010, against AGK and Comerica, alleging AGK and Comerica had breached the CC&Rs by failing to pay certain security deposits upon their acquisition of certain lots in the development.  *See* Opp'n at 15.  The parties settled the case about a year later.  *Id.*  Westwood filed the first action (the "Kincade action") on May 2, 2011, against AGK, the HOA, and homeowners Robert and Jennielyn Kincade, alleging the Kincades violated the development's CC&Rs and seeking a declaration as to whether Westwood or AGK was the "declarant" under the CC&Rs.  *Id.* at 11–12.  This suit ultimately went to arbitration.  *Id.* Westwood filed the third action (the "Murphy action") on January 25, 2013, against AGK, Don Murphy and others, making similar claims.  *Id.* at 13–14.

On April 17, 2015, AGK demanded that Comerica indemnify AGK in connection with the Westwood litigation, but Comerica refused.  SUF 42 (disputed on other grounds); SUF 43.  AGK filed suit against Comerica in Placer County, alleging a breach of contract claim and a claim for declaratory relief.  Not. of Removal at 5.  On June 15, 2015, Comerica timely removed the action to this court.  *Id.* at 1.  Plaintiff AGK now moves for partial summary judgment on the issue of liability only, on both its breach of contract claim and declaratory relief claim against

/////

4

1  Comerica.  Mot., ECF No. 44.  Defendant opposes, Opp'n, ECF No. 50-1,[4] and plaintiff has

2  replied, Reply, ECF No. 51.  The court heard oral argument on February 7, 2020, and submitted

3  the motion.  For the reasons below, the court DENIES the motion for summary judgment.

4  II.     LEGAL STANDARD

5          A court will grant summary judgment "if . . . there is no genuine dispute as to any

6  material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

7  The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

8  resolved only by a finder of fact because they may reasonably be resolved in favor of either

9  party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[5]

10         The moving party bears the initial burden of showing the district court "that there

11  is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*,

12  477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish

13  that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio

14  Corp.*, 475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to particular

15  parts of materials in the record . . .; or show [] that the materials cited do not establish the absence

16  or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

17  support the fact."  Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the

18  nonmoving party] must do more than simply show that there is some metaphysical doubt as to the

19  material facts").  Moreover, "the requirement is that there be no genuine issue of material fact

20  . . . . Only disputes over facts that might affect the outcome of the suit under the governing law

21  will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 247–48

22  (emphasis in original).

23  _____

24      [4] After filing its initial opposition, which exceeded the court's page limit, defendant
noticed its mistake and filed a notice of errata and a revised opposition.  *See* ECF Nos. 49–50.

25  The court accepts the revised opposition, ECF No. 50-1.

26      [5] Rule 56 was amended, effective December 1, 2010.  However,  it is appropriate to rely
on cases decided before the amendment took effect, as "[t]he standard for granting summary

27  judgment remains unchanged."  Fed. R. Civ. P. 56, Notes of Advisory Comm. on 2010

28  amendments.

1    In deciding a motion for summary judgment, the court draws all inferences and

2    views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at

3    587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).  "Where the record taken as a

4    whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

5    issue for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv.*

6    *Co.*, 391 U.S. 253, 289 (1968)).

7    III.    DISCUSSION

8    Plaintiff argues the court should grant summary judgment, because Comerica is

9    required to indemnify AGK for the Westwood litigation under the indemnity provision in the

10   Assignment of Declarant's Rights recorded with the Placer County Recorder on June 30, 2010.

11   Mot. at 2; SUF 33 (disputed on other grounds).  The indemnity provision reads:

12   [Comerica] agrees to indemnify, defend and hold [AGK] harmless
     from and against any and all loss, liability, claims or causes of action
13   existing in favor of or asserted by any party arising out of
     [Comerica]'s position as 'Declarant' under the CC&Rs on or before
14   the date first written above. In accordance herewith, [Comerica]
     expressly acknowledges that the undersigned shall remain
15   responsible for all obligations, responsibilities and liabilities that
     accrued before the date of this assignment.
16

17   SUF 14; Assignment at 13.  Defendant argues that, if this provision is enforceable, it does not

18   require indemnification of the Westwood litigation, because Westwood filed the suits at issue

19   after June 30, 2010, the "date first written above" for the purpose of the indemnity provision.

20   Opp'n at 17.  Plaintiff's counterargument is twofold: (1) the phrase "on or before the date first

21   written above" applies to the phrase "[Comerica]'s position as 'Declarant' under the CC&Rs,"

22   not the phrase "any and all loss, liability, claims or cause of action existent in favor of or asserted

23   by any party," and (2) regardless, the Westwood litigation arises out of events that occurred

24   before June 30, 2010.  Reply at 11–12.  The court begins by addressing the first argument.

25   A.    Competing Interpretations of Indemnity Provision

26   "Whether language in a contract is ambiguous is a question of law."  *Daniel v.*

27   *Ford Motor Co.*, 806 F.3d 1217, 1224 (9th Cir. 2015) (quoting *Producers Dairy Delivery Co. v.*

28   *Sentry Ins. Co.*, 41 Cal. 3d 903, 718 P.2d 920 (1986), 41 Cal. 3d 903, 925 (Cal. 1986)).  "An

agreement is not ambiguous merely because the parties (or judges) disagree about its meaning."
*Abers v. Rounsavell*, 189 Cal. App. 4th 348, 356 (2010).  Rather, the determination of ambiguity
(and therefore, whether to admit parol evidence to resolve that ambiguity) involves two steps.
"First, the court provisionally receives (without actually admitting) all credible evidence
concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is
'reasonably susceptible' to the interpretation urged by a party."  *Winet v. Price*, 4 Cal. App. 4th
1159, 1165 (1992).  If the contract is not "'reasonably susceptible' to the interpretation urged,"
then "the case is over."  *S. Cal. Edison Co. v. Superior Court*, 37 Cal. App. 4th 839, 847–48
(1995).  But "[i]f in light of the extrinsic evidence the court decides the language is 'reasonably
susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the
second step—interpreting the contract."  *Winet*, 4 Cal. App. 4th at 1165.  Whether a contract is
ambiguous is a question of law, but if the contract is ambiguous, the conflict ordinarily raises a
genuine dispute of material fact inappropriate for resolution on summary judgment.  *San Diego
Gas & Elec. Co. v. Canadian Hunter Mktg. Ltd.*, 132 F.3d 1303, 1307 (9th Cir. 1997).
"[C]onstruing all evidence in the light most favorable to, and making all reasonable inferences in
favor of, the non-moving party," the court's task is to determine whether "the ambiguity could be
resolved in a manner consistent with the non-moving party's claim."  *Id*.  "Only if the ambiguity
could be so resolved would summary judgment be denied."  *Id.*

Even before considering the parties' extrinsic evidence, a fair review of the
contract language yields the conclusion the phrase "on or before the date first written above" may
be intended to modify either the phrase "any and all loss, liability, claims or causes of action
existing in favor of or asserted by any party" or it may be intended to modify "[Comerica]'s
position as 'Declarant' under the CC&Rs."  The placement of the phrase "on or before the date
first written above," without a comma separating it from the preceding clause, creates an
ambiguity.  Drawing all reasonable inferences in favor of defendants, the nonmovants, the
contract could reasonably be interpreted to require defendant to indemnify plaintiff only for
claims that existed before the assignment was executed.  Without the temporal limitation on
claims, Comerica would be required to indemnify AGK for a potentially endless number of

claims, in perpetuity; one would reasonably expect Comerica intended to limit its exposure in some way.  Plaintiff argues the parties did not intend to so limit the claims; because both parties knew no relevant claims had been filed at the time of assignment, the provision would be rendered meaningless if it included such a limitation.  Reply at 5.  Yet, plaintiff contradicts itself by also arguing that the claims asserted by Westwood in the Kincade action and the Murphy action "existed" before the date of the assignment, because the basis for the liability arose on or before the date of the assignment.  *Id.*  This suggests that a temporal limitation would not render the provision meaningless, because it would cover claims that "existed," but were not formally filed, at the time of the assignment.

On this record, the court cannot grant plaintiff summary judgment as a matter of law on the issue of contract interpretation, because defendant's interpretation is a reasonable one that a reasonable factfinder might accept.

Plaintiff argues that, even if the contract is interpreted to limit the claims, summary judgment is still appropriate because at least some of the claims in the Westwood litigation arose on or before the date of assignment.  Assuming without deciding that this is correct, the court still cannot grant summary judgment because a genuine factual dispute exists with respect to defendant's affirmative defense of unilateral mistake, addressed below.

B.   <u>Defendant's Defense of Unilateral Mistake</u>

Defendant argues the indemnity provision should not be enforced, and the contract should be partially rescinded, because Comerica's representative, Keith Maruska, mistakenly believed the contract did not contain an indemnity provision when he signed it.  Opp'n at 21.  Under California law, a contract may be rescinded if "the consent of the party rescinding . . . was given by mistake[.]"  Cal. Civ. Code § 1689(b)(1).  "A factual mistake by one party to a contract, or unilateral mistake, affords a ground for rescission in some circumstances."  *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 278, *as modified* (Sept. 12, 2001).  A mistake of fact is defined by California law to mean: "a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: [a]n unconscious ignorance or forgetfulness of a fact past or present, material to the contract . . . ."  Cal. Civ. Code § 1577.  Defendant bears the

8

ultimate burden of proving the contract is voidable based on a unilateral mistake of fact. *Roth v. Jaguar Land Rover N. Am., LLC*, No. SACV1701522AGDFMX, 2017 WL 10545074, at *3 (C.D. Cal. Dec. 4, 2017) ("When 'the meaning of the relevant contractual language is not in dispute, the party alleging the mistake . . . bears the burden of proving that a mistake occurred.'" (quoting *Hess v. Ford Motor Co.*, 27 Cal. 4th 516, 525 (2002))); *cf. Palo Alto Town & Country Vill. Inc. v. Deutsche Lufthansa AG*, No. C-00-4538 VRW, 2002 WL 1363868, at *3 (N.D. Cal. June 17, 2002) ("Rescission due to mutual mistake is an affirmative defense to a contract action."), *aff'd*, 91 F. App'x 550 (9th Cir. 2004).

In the case of *Donovan v. RRL Corporation*, the California Court of Appeals explained that California does not follow the "traditional rule recited in the First Restatement of Contracts, section 503," that a "unilateral mistake [does] not render a contract voidable unless the other party knew of or caused the mistake." *Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1588 (2005) (citing *Donovan*, 26 Cal. 4th at 278–282. Instead, the court adopted Section 153 of the Restatement (Second) of Contracts, construed in light of previous California state court decisions, which states:

> Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and
>
> (a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or
>
> (b) the other party had reason to know of the mistake or his fault caused the mistake.

*Donovan,* 26 Cal. 4th at 282 (citing Restatement (Second) of Contracts § 153 (1981)). Later cases clarified the requirement that the party seeking rescission "does not bear the risk of the mistake" parallels the statutory requirement that the party's mistake is not the result of its "neglect of legal duty." *See Rios v. Paramo*, No. 13CV2455-WQH-JMA, 2015 WL 8492500, at *5 (S.D. Cal. Dec. 10, 2015) (citing Cal. Civ. Code § 1577); *see also Wal-Noon Corp. v. Hill*,

/////

/////

9

1   45 Cal. App. 3d 605, 615 (Cal. Ct. App. 1975) ("Failure to make reasonable inquiry to ascertain

2   or effort to understand the meaning and content of the contract . . . constitutes neglect of a legal

3   duty such as will preclude recovery for unilateral mistake of fact.").

4                    1.       "Neglect of a Legal Duty"

5                    Thus, the court must first determine whether there is a factual dispute over whether

6   Mr. Maruska's failure to read the contract was so negligent that it constituted "neglect of a legal

7   duty," Cal. Civ. Code § 1577, precluding rescission.

8                    "[O]rdinary negligence does not constitute neglect of a legal duty within the

9   meaning of Civil Code section 1577." *Donovan*, 26 Cal. 4th at 283 (citation omitted); *see also*

10  *Elsinore Union Elementary Sch. Dist. of Riverside Cty. v. Kastorff*, 54 Cal. 2d 380, 386 (1960)

11  ("Not all carelessness constitutes a 'neglect of legal duty' within the meaning of the section[.]").

12  "Only where the mistake results from 'a failure to act in good faith and in accordance with

13  reasonable standards of fair dealing' is rescission unavailable." *Donovan*, 26 Cal. 4th at 283.  In

14  rare cases, failure to read a contract can be excusable, where defendant offers evidence

15  sufficiently explaining such a failure.  *Roller v. California Pac. Title Ins. Co.*, 92 Cal. App. 2d

16  149, 154 (1949); *but see Desert Outdoor Advert. v. Superior Court*, 196 Cal. App. 4th 866, 872

17  (2011) ("A cardinal rule of contract law is that a party's failure to read a contract, or to carefully

18  read a contract, before signing it is no defense to the contract's enforcement.").  Especially where

19  the parties are dealing at arms-length, it is generally considered not reasonable to fail to read a

20  contract, even if the party seeking rescission relied on the opposing party's assertion that it was

21  not necessary to read the contract.  *Brown v. Wells Fargo Bank, N.A.*, 168 Cal. App. 4th 938, 959

22  (2008) (analyzing fraud in execution defense with similar elements) (citation omitted); *see also*

23  *Nash v. UCSF Med. Ctr.*, No. 11-CV-4473 JSC, 2013 WL 4487503, at *2 (N.D. Cal. Aug. 19,

24  2013) ("negligently failing to read the document" is generally bar to rescission based on unilateral

25  mistake) (quoting *Fraters Glass & Paint Co. v. Southwestern Const. Co.,* 107 Cal. App. 1, 6

26  (1930)); *Roller*, 92 Cal. App. 2d at 154 ("[W]here the failure to familiarize one's self with the

27  contents of a written contract prior to its execution is traceable solely to carelessness or

28  negligence, reformation as a rule should be denied.").

                                                   10

1          Viewing the evidence in the light most favorable to defendant, a reasonable

2   factfinder could conclude Mr. Maruska was reasonable in his belief that only the buyer name had

3   been changed on the final version of the contract.  Mr. Maruska's testimony regarding the

4   representation from AGK's representative that he was changing the buyer name in the final

5   version, First American's silence as to any other changes, and the parties' existing practice of

6   notifying each other as to each change made in a new version of the contract, creates a factual

7   dispute over the reasonableness of Mr. Maruska's failure to read the contract.  *See Reid v.*

8   *Landon*, 166 Cal. App. 2d 476, 484 (1958) (finding rescission warranted where defendant's

9   mistake was "a natural and reasonable mistake due largely to defendant's reliance on the

10  plaintiffs' representations that the document reflected the terms of her original agreement").

11  Though the weight of authority suggests not reading a contract is nearly always neglect of a legal

12  duty, the circumstances of this negotiation were such that a reasonable factfinder believing

13  Mr. Maruska's testimony could still find he acted as a "reasonable and cautious businessm[a]n,"

14  *Elsinore Union Elementary Sch. Dist. of Riverside Cty.*, 54 Cal. 2d at 386.  The court cannot find,

15  as a matter of law, defendant's affirmative defense fails based on Mr. Maruska's failure to read

16  the contract.

17          2.      Plaintiff's Knowledge or Unconscionability

18          As for the remaining elements for rescission, defendant argues both alternative

19  elements for rescission are met here: (1) plaintiff knew and caused defendant's unilateral mistake

20  and, even if this is not the case, (2) the effect of the mistake is such that enforcement would be

21  unconscionable.  Opp'n at 21–23.  Plaintiff argues defendant has no evidence to support either of

22  these elements.  Reply at 7, 10.  The parties do not appear to dispute that defendant's mistake

23  with respect to the indemnity provision "has a material effect on the agreed exchange of

24  performances that is adverse to [defendant]."  *Donovan,* 26 Cal. 4th at 282.  Rather, plaintiff

25  argues any mistake of fact was due only to defendant's failure to read the contract before signing

26  it.  Reply at 4.

27  /////

28  /////

1       For the same reasons, a reasonable factfinder could find plaintiff knew of or

2   should have known of Mr. Maruska's mistaken belief that the contract did not contain an

3   indemnity provision.  Although AGK's representative explained the changes made to the

4   Assignment of Rights to First American, Reply at 8 (citing Gorry Decl., Ex. C, ECF No. 44-4, at

5   228), plaintiff does not offer any evidence that it expressly called out the changes to any of

6   Comerica's representatives, other than an e-mail from First American to Mr. Maruska attaching

7   the edited Assignment using the document title "New Assignment."  *Id.*; Gorry Decl., Ex. F, ECF

8   No. 44-7, at 69, 75.  On this record, one could reasonably infer that AGK's representative knew

9   Mr. Maruska believed the substance of the contract was unchanged from the previous version

10  based on the parties' existing practice and, knowing this, intentionally did not flag the added

11  indemnity provision for him.  The email transmission raises another genuine factual dispute,

12  preventing the court from finding defendant's defense fails as a matter of law based on this

13  element.

14      Because a reasonable factfinder could find that: (1) Mr. Maruska's negligence

15  does not preclude the defense of rescission, and (2) rescission is warranted based on the theory

16  that plaintiff knew of Mr. Maruska's mistake, the court cannot grant summary judgment in favor

17  of plaintiff.  Defendant has met its burden of showing the viability of its affirmative defense,

18  which must be decided by a jury.  Accordingly, the court need not reach the question of whether

19  defendant has raised a factual dispute as to the alternative element, unconscionability.

20  IV.    REQUEST FOR JUDICIAL NOTICE

21      In conjunction with its opposition to the motion for summary judgment, defendant

22  requests judicial notice of several events related to underlying Westwood litigation.  ECF No. 48-

23  1.  Because these events have no bearing on the outcome of plaintiff's motion, the court DENIES

24  the request as moot.

25  /////

26  /////

27  /////

28  /////

V.     <u>CONCLUSION</u>

        The motion for partial summary judgment is DENIED.  This order resolves ECF No. 44 and 48-1.  A final pretrial conference is set for **Friday, October 16, 2020 at 10:00 a.m.** The parties SHALL meet and confer and file a joint status report 14 days prior to the final pretrial conference addressing matters the court should consider in setting a trial date.  *See* E.D. L.R. 282.

        IT IS SO ORDERED.

DATED:  August 31, 2020.

_____

CHIEF UNITED STATES DISTRICT JUDGE

13