1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  AGK SIERRA DE MONTSERRAT, L.P.,          No. 2:15-cv-01280-DAD-SCR

12                    Plaintiff,

13          v.                                ORDER GRANTING PLAINTIFF'S
                                              MOTIONS FOR ATTORNEYS' FEES AND
14  COMERICA BANK,                            POST-JUDGMENT INTEREST

15                    Defendant.              (Doc. Nos. 139, 141)

16

17

18          This matter is before the court on plaintiff's motions for attorneys' fees and costs and for

19  post-judgment interest. (Doc. Nos. 139, 141.) On September 5, 2024, the pending motion was

20  taken under submission to be decided on the papers pursuant to Local Rule 230(g). (Doc. No.

21  143.) For the reasons explained below, the court will grant both plaintiff's motion for attorneys'

22  fees and costs and motion for post-judgment interest.

23                                  **BACKGROUND**

24          On April 29, 2015, plaintiff AGK Sierra De Montserrat, L.P ("AGK") filed the operative

25  complaint initiating this breach of contract action in the Placer County Superior Court. (Doc. No.

26  1 at 5.) In that complaint, plaintiff asserted a single state law claim for breach of contract in

27  connection with defendant's failure to indemnify plaintiff and sought declaratory relief as to the

28  parties' respective rights and obligations under an indemnification provision of their contract.

1

1    (*Id.* at 8–9.)  Plaintiff alleged that defendant had foreclosed on 51 lots owned by Westwood

2    Montserrat, Ltd ("Westwood").  (*Id.* at 6–7.)  Plaintiff also alleged that defendant had sold those

3    51 lots in Sierra de Montserrat to plaintiff and provided plaintiff with a written Assignment of

4    Declarants' Rights ("the ADR").  (*Id.* at 7.)  Plaintiff further alleged that in one provision of the

5    ADR defendant agreed to indemnify plaintiff against any and all loss, liability, claims, or causes

6    of action arising out of defendant's position as declarant.  (*Id.*)  According to plaintiff, Westwood

7    had then brought two separate lawsuits against plaintiff, which this court has referred to as "the

8    Kincade Action" and "the Murphy Action."  (*Id.*; Doc. No. 118 at 39.)  Plaintiff sought relief

9    from defendant in the form of indemnification for those actions.  (Doc. No. 1 at 9.)  On June 15,

10   2015, defendant removed this action to this federal court.  (Doc. No. 1.)

11        On November 7, 2019, plaintiff moved for summary judgment in its favor on all of its

12   claims.  (Doc. No. 44.)  That motion was denied by the previously assigned district judge on

13   August 31, 2020.  (Doc. No. 56.)  Thereafter, a six-day bench trial commenced on May 25, 2022

14   before the undersigned.[1]  (Doc. Nos. 92, 93, 94, 95, 96, 97.)  The court issued its findings of fact

15   and conclusions of law on January 27, 2023.  (Doc. No. 118.)  The court found that plaintiff and

16   defendant had entered into a Purchase and Sale Agreement ("the PSA") for the sale of the lots.

17   (*Id.* at 5.)  The PSA was amended on June 25, 2010 to require defendant to provide plaintiff with

18   the ADR "in form and substance acceptable" to plaintiff.  (*Id.* at 15.)  The ADR was executed and

19   then recorded on June 30, 2010.  (*Id.* at 39.)   The court determined that defendant had later

20   breached the ADR and the court entered judgment in plaintiff's favor.  (*Id.* at 93.)

21        The court determined the damages and prejudgment interest to which plaintiff was

22   entitled.  (*Id.* at 93.)  The court noted that plaintiff sought $5,246,469.11 in damages and

23   prejudgment interest, comprised of:  (1) $1,000,311.09 in attorneys' fees and costs in connection

24   with the Kincade Action, (2) $1,377,345.75 in attorneys' fees and costs as to the Murphy Action,

25   (3) $1,146,337.24 in attorneys' fees and costs in connection with this action, and

26

27   ─────────────
     [1]  The coronavirus pandemic, the parties' settlement negotiations, and the reassignment of this
     case to the undersigned resulted in numerous continuances of the trial date.  (*See* Doc. Nos. 59,
28   61, 64, 66, 68, 71, 72, 75, 83, 85, 88.)

1  (4) $1,722,475.03 in prejudgment interest.  (*Id.* at 42.)  The court found that plaintiff could

2  recover the attorneys' fees and costs that it had incurred defending itself in the Kincade and

3  Murphy actions.  (*Id.* at 72, 76.)  However, the court also found plaintiff could not recover

4  attorneys' fees and costs incurred defending the Kincades in the Kincade action nor the attorneys'

5  fees and costs incurred defending Mr. Murphy in the Murphy action, nor the expenses and

6  attorneys' fees that had already been fully paid by plaintiff's title insurer First American Title

7  Company.  (*Id.* at 72, 77, 80.)  Finally, the court determined that under Ninth Circuit precedent

8  interpreting California law, plaintiff was entitled to recover the fees and costs it incurred in this

9  action in enforcing the indemnity paragraph of its contract with defendant as damages.[2]  (*Id.* at

10 81.)  Specifically, the undersigned explained:

> The Ninth Circuit has interpreted California caselaw as holding that
> "costs and attorney's fees for prosecuting an indemnification claim
> may be included in the indemnification award."  *DeWitt v. W. Pac.
> R.R. Co.*, 719 F.2d 1448, 1453 (9th Cir. 1983) (acknowledging a split
> in California authority on the subject).  Nearly a decade after
> deciding *DeWitt*, the Ninth Circuit was asked to "reevaluate" its
> holding in *DeWitt* in light of an intermediate California appellate
> court decision issued after *DeWitt*.  *See Jones Hamilton Co. v. Beazer
> Materials & Servs., Inc.*, 973 F.2d 688, 696 n.4 (9th Cir. 1992).  The
> Ninth Circuit declined to do so, recognizing that an "intermediate
> appellate court decision on one side of a clear split . . . does not
> provide the kind of indication that our past interpretation of
> California law was incorrect that would cause us to revisit our
> holding in *DeWitt*."  *Id.*
>
> "*DeWitt's* interpretation of California law is 'binding in the absence
> of any subsequent indication from the California courts that [the
> Ninth Circuit's] interpretation was incorrect.'"  *Id.* (quoting *Owen v.
> United States*, 713 F.2d 1461, 1464 (9th Cir. 1983)).  Although
> Comerica cites additional intermediate California appellate court
> decisions that decline to follow *DeWitt*, these opinions are merely
> "on one side of a clear split" and do not indicate that the Ninth
> Circuit's past interpretation of California law in *DeWitt* and *Jones*
> was incorrect.  *See Monolithic Power Sys., Inc. v. Taiwan Sumida
> Elecs., Inc.*, No. 4:05-cv-03522-CW, 2007 WL 1831118, at *10
> (N.D. Cal. June 25, 2007) (finding that "the additional intermediate
> appellate cases" cited by plaintiff "do 'not provide the kind of
> indication' that the Ninth Circuit's 'past interpretation of California
> law was incorrect'") (quoting *Jones*, 973 F.2d at 696 n.4).  Because

---

[2]  At the same time the undersigned concluded that plaintiff AGK was not entitled to recover the attorneys' fees and costs it had incurred in defending the Kincades, Mr. Murphy, Kinetic Homes, and Kinetic Partners in the Kincade action, the Murphy action, and this action.  (Doc. No. 118 at 82).

the decisions in *DeWitt* and *Jones* remain binding caselaw, the court concludes that AGK may recover the fees and costs it incurred in this action to enforce the indemnity paragraph of the final ADR.  *See DeWitt*, 719 F.2d at 1453; *Jones*, 973 F.2d at 696 n.4; *Monolithic Power Sys., Inc.*, 2007 WL 1831118, at *10 (noting that the court is "bound" to follow *DeWitt* and *Jones* "[a]bsent any ruling from the California Supreme Court or the Ninth Circuit on this issue); *see also Krag v. Kaiser Found. Hosp.*, No. 3:89-cv-03042-TEH, 1993 WL 226108, at *6 (N.D. Cal. June 15, 1993) (holding that an indemnitee is entitled to recover its fees incurred in prosecuting its indemnity claims against an indemnitor) (citing *DeWitt*, 719 F.2d at 1452–53).

(Doc. No. 118 at 80–81.)  Accordingly, the court awarded plaintiff a total amount of $2,660,574.17 in damages (including attorney's fees and costs) comprised of $610,812.09 in connection with the Kincade action, $903,424.84 as to the Murphy action, and $1,146,337.24 09 in connection with this action.  (*Id.* at 93.)  Additionally, the court awarded plaintiff $216,720.19 in prejudgment interest.  (*Id.*)  The court entered judgment on January 27, 2023.  (Doc. No. 119.)

Defendant timely appealed from this court's judgment.  (Doc. No. 124.)  On August 19, 2024, the Ninth Circuit issued a memorandum decision reversing this court's award to plaintiff of attorneys' fees incurred in the amount of $1,146,337.24 in prosecuting this breach of contract action based upon the indemnification provision.  *AGK Sierra De Montserrat, L.P. v. Comerica Bank*, 109 F.4th 1132 (9th Cir. 2024).  In the memorandum decision, the Ninth Circuit acknowledged that the "sole issue" before it was whether an award of fees as damages "for litigating the indemnity obligation between the parties was contrary to California law." *Id.* at 1135.  Addressing that issue, the Ninth Circuit concluded that the California Supreme Court would no longer agree with the holding in *DeWitt* and that there is now a California state-law presumption that indemnity provisions in contracts only apply to third-party losses, rather than first-party litigation costs. *Id.* at 1141.  The court explained:

[C]ases since *DeWitt* clearly evince a presumption against reading first-party attorney fees into indemnity clauses, and that presumption reconciles the general purpose of indemnity clauses with [California Civil Code] section 1717.  Therefore, in our "own best judgment," we conclude the California Supreme Court would not agree with *DeWitt*.  *T-Mobile USA Inc*., 908 F.3d at 586 (quotation omitted).  Instead, it would likely apply a presumption that indemnity provisions only apply to third-party losses.  This presumption applies to even broad language in indemnity provisions, like "all claims . . . arising out of or resulting from performance of the Work," *Myers*, 13 Cal. App. 4th at 964, 17 Cal. Rptr. 2d 242, and "all liability" relating

to claims by "any person" for injuries "aris[ing] out of, or . . . in any way connected with, or incidental to the performance of the work under this [ ]contract," *Otis*, 27 Cal. App. 4th at 561 n.1, 32 Cal. Rptr. 2d 404. Put differently, indemnity provisions that cover "any, all, and every claim which arises out of the performance of the contract deal[ ] only with third party claims." *Alki*, 4 Cal. App. 5th at 601, 209 Cal. Rptr. 3d 151 (internal citation and quotation marks omitted).

. . .

Notwithstanding our court's forty-year-old precedent to the contrary, California law presumes that indemnity provisions do not cover the costs of litigation to enforce them. The indemnity provision here does not rebut that presumption, and therefore AGK is not entitled to attorney fees spent in litigating the present suit based on that provision. We therefore reverse the award of those fees and remand to the district court.

*Id.* at 1141–42.

On appeal, plaintiff had argued that the panel should alternatively affirm this court's award of fees based on a separate attorneys' fees clause contained in the parties' PSA. *Id*. at 1142. The Ninth Circuit remanded the action to this court to determine whether that argument, which was raised for the first time on appeal, had been waived or forfeited and, if not, whether plaintiff was entitled to first-party attorneys' fees based on the attorneys' fees clause in the PSA. *Id.* On August 12, 2024, the Ninth Circuit issued its mandate. (Doc. No. 138.)

Following remand, on August 26, 2024, plaintiff filed a Rule 54(d)(2) motion for attorneys' fees and costs as well as a motion for post-judgment interest. (Doc. Nos. 139, 141.) On September 16, 2024, defendant filed oppositions to those two motions. (Doc. Nos. 146, 146-1.) On September 26, 2024, plaintiff filed its replies thereto. (Doc. Nos. 147, 148.)

After review of the parties' briefing, the undersigned directed the parties to file simultaneous supplemental briefing addressing whether: (1) if plaintiff's motion was not timely filed, that untimeliness was a result of "excusable neglect;" and (2) whether performance of the ADR was an express condition of the PSA. (Doc. No. 149 at 2.) On February 6, 2025, the parties filed simultaneous supplemental briefing in response to the court's order. (Doc. Nos. 152, 153.)

## LEGAL STANDARD

"Rule 54 provides a federal procedural mechanism for moving for attorney's fees that are due under state law." *Linde, LLC v. Valley Protein, LLC*, No. 1:16-cv-00527-DAD-EPG, 2019

WL 4879206, at *1 (E.D. Cal. Oct. 3, 2019) (quotation marks omitted) (quoting *Cheffins v. Stewart*, 825 F.3d 588, 597 (9th Cir. 2016)).  "In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney[s'] fees . . . ."  *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007).  "Under California law, attorney's fees and costs are recoverable when 'expressly authorized by statute or contract.'"  *Sunbelt Rentals, Inc. v. Three Bros. Elec. Contractors, Inc.*, No. 1:21-cv-01357-JLT-SKO, 2023 WL 5103739, at *2 (E.D. Cal. Aug. 9, 2023) (quoting *Real Prop. Servs. Corp. v. City of Pasadena*, 25 Cal. App. 4th 375, 379 (1994)).  In a breach of contract action, California law provides that:

> where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.
>
> . . .
>
> The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section[.] . . . [T]he party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract.

Cal. Civ. Code § 1717.

"Under Rule 54 of the Federal Rules of Civil Procedure, a motion for attorney's fees must be filed 'no later than 14 days after entry of judgment.'"  *Schultz v. Ichimoto*, No. 1:08-cv-00526-OWW-SMS, 2010 WL 4643648, at *1 (E.D. Cal. Nov. 9, 2010) (quoting Fed. R. Civ. P. 54(d)(2)(B)(i)).

"When state law authorizes a party to recover fees, a federal court applies state law to calculate the amount of those fees."  *Marshall v. Boeing Co.*, No. 16-cv-08630-DMG-MRW, 2019 WL 4391111, at *1 (C.D. Cal. June 10, 2019) (citing *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995)).  "[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate."  *PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) (holding that the lodestar approach applies in the § 1717 context); *EnPalm, LLC v. Teitler*, 162 Cal. App. 4th 770, 774 (2008) (applying the lodestar approach in the § 1717 context); *Hopkins v. Wells Fargo Bank,*

1    *N.A.*, No. 2:13-cv-00444-WBS-CKD, 2014 WL 2987753, at *3 (E.D. Cal. July 1, 2014) (same).

2        Under California law, a court "may exclude excessive, redundant, and unnecessary hours

3    when calculating a lodestar." *Kerkeles v. City of San Jose*, 243 Cal. App. 4th 88, 101 (2015).

4    "The reasonable hourly rate is that prevailing in the community for similar work.'" *PLCM Grp.*,

5    22 Cal. 4th 1084, 1095 (2000).  In determining the prevailing hourly rate in a community,

6    California courts look to "[t]he rates of comparable attorneys in the forum district" and consider

7    "the experience, skill, and reputation of the attorney requesting fees." *Nishiki v. Danko Meredith,*

8    *APC*, 25 Cal. App. 5th 883, 898 (2018) (internal quotation marks omitted).  "The reasonable

9    market value of the attorney's services is the measure of a reasonable hourly rate. […]  This

10   standard applies regardless of whether the attorneys claiming fees charge nothing for their

11   services, charge at below-market or discounted rates, represent the client on a straight contingent

12   fee basis, or are in-house counsel." *Syers Props. III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 701

13   (2014) (internal quotation marks and citations omitted).

14        "The lodestar figure may then be adjusted, based on consideration of factors specific to

15   the case, in order to fix the fee at the fair market value for the legal services provided." *PLCM*

16   *Grp.*, 22 Cal.4th at 1095.  Those relevant factors can include:  "(1) the novelty and difficulty of

17   the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the

18   nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent

19   nature of the fee award." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (citing *Serrano v.*

20   *Priest*, 20 Cal. 3d 25 (1977))[3].  California courts also consider the limited success of a plaintiff to

21   determine whether reduction of a fee award is appropriate.  *Chavez v. City of Los Angeles*, 47 Cal.

22   4th 970, 989–90 (2010) (noting that "California law is consistent with federal law" on the issue of

23   limited success).  However, California courts have also recognized that:

24   /////

---

25   [3]  The California Supreme Court identified seven factors that are among those which may be
26   considered by a trial court when determining whether to enhance or reduce a lodestar.  *Thayer v.*
    *Wells Fargo Bank, N.A.*, 92 Cal. App. 4th 819, 834–35 (2001).  The three unlisted factors are
27   inapplicable in the present case, as this action was not brought against a public entity, the
    financial burden to pay an award will not fall upon the taxpayers, and plaintiff was not
28   represented by a non-profit public interest law firm or a legal services program.  *Id.*

1
2
3
4
5

> California does not follow the approach to fee awards adopted by the federal courts. Therefore, although there is appeal in the high court's finding that many of the factors commonly used to enhance a lodestar figure more properly are considered in determining the lodestar figure at the outset, under present California law the relevant factors are considered only after the lodestar figure has been determined and are used to augment or diminish it. […] As a result, an upward or downward adjustment from the lodestar figure will be far more common under California law than under federal law.

6

*Weeks v. Baker & McKenzie*, 63 Cal. App. 4th 1128, 1173 (1998); *see also Chavez*, 47 Cal. 4th at

7

985 n.6 (same).

8

**DISCUSSION**

9

**A.    Extension of Time for Rule 54 Motion for Attorneys' Fees**

10

Federal Rule of Civil Procedure 54(d)(2) requires that a motion for attorneys' fees must be

11

filed "no later than 14 days after the entry of judgment[.]" Fed. R. Civ. P. 54. Judgment was

12

entered in this action on January 27, 2023, but plaintiff's motion now pending before the court

13

was not filed until August 26, 2024. (Doc. Nos. 119, 139.) In its supplemental briefing, plaintiff

14

asks that the court deem its moving papers to have advanced a request for an extension of time

15

pursuant to Federal Rule of Civil Procedure 6(b), which the court will do.[4] (Doc. No. 152 at 13.)

16

Federal Rule of Civil Procedure 6(b)(1)(B) provides that a district court may, within its

17

discretion, permit a party to file an untimely motion if the party "failed to act because of

18

excusable neglect." Fed. R. Civ. P. 6(b)(2). Courts analyze whether neglect is excusable on an

19

equitable standard considering the four *Pioneer* factors: "(1) the danger of prejudice to the

20

opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the

21

reason for the delay; and (4) whether the movant acted in good faith." *Bateman v. U.S. Postal*

22

*Serv.*, 231 F.3d 1220, 1223–24 (9th Cir. 2000) (citing *Pioneer Inv. Servs. Co. v. Bunswick Assocs.*

23

*Ltd. P'ship ("Pioneer")*, 507 U.S. 380, 395 (1993)). "Although inadvertence, ignorance of the

24

/////

25

26
27
28

---

[4] Plaintiff also asserts that its attorneys' fees motion was timely filed since it had not had the opportunity to bring a post-judgment motion seeking the award of attorneys' fees because this court had awarded those fees as a part of its judgment and plaintiff could not seek duplicative relief. (Doc. No. 139 at 15–16.) The court need not consider this argument because it will enlarge the time for filing pursuant to Rule 6(b) based on a finding of excusable neglect.

1   rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that

2   'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept[.]'" *Pioneer*, 507 U.S. at 392.

3        1.   Reason for the Delay

4        In its supplemental briefing, plaintiff states that the reason for its delay was that this court

5   had awarded attorneys' fees as damages and plaintiff did not wish to waste the parties' and the

6   court's resources on a motion seeking duplicative relief.  (Doc. No. 152 at 8.)  Defendant, in its

7   supplemental briefing, argues that, in essence, plaintiff delayed because it did not believe it was

8   required to file its motion until after the mandate returned, that this is a mistake of law created by

9   plaintiff's misunderstanding of Rule 54, and that under Ninth Circuit authority this mistake of law

10  cannot constitute a reason for delay.  (Doc. No. 153 at 10.)

11       The court is persuaded by plaintiff's contention that its reason for delay was to avoid

12  litigation over a request for duplicative relief.  Though Rule 54 requires that parties move to

13  recover attorneys' fees within fourteen days of judgment regardless of whether an appeal will be

14  filed, this action is unusual because the judgment provided the relief by way of damages that

15  plaintiff would have received through a motion for attorneys' fees brought pursuant to Rule 54.

16  (Doc. No. 118 at 93.)  Under most circumstances, neglect which is fully within the control of the

17  moving party and is due to carelessness or ignorance of the law is not excusable.  *Engleson v.*

18  *Burlington N. R.R. Co.*, 972 F.2d 1038, 1043–44 (9th Cir. 1992) ("Neither ignorance nor

19  carelessness on the part of the litigant or his attorney provide grounds for relief under Rule

20  60(b)(1).") (internal quotation marks omitted).  However, the court must take into account all

21  relevant circumstances surrounding plaintiff's failure to timely file a Rule 54 motion, including

22  that such a motion would have been duplicative in nature.  *See Brandt v. Am. Bankers Ins. Co. of*

23  *Fla.*, 653 F.3d 1108, 1111 (9th Cir. 2011) (noting that in evaluating excusable neglect, a court

24  should consider all relevant circumstances).  The court finds that the nature of the pending motion

25  as one seeking relief that would have been duplicative to that provided in the judgment entered by

26  this court and the potential that such a motion would have proven wasteful of this court's scarce

27  judicial resources is a particularly relevant circumstance providing good reason for plaintiff's

28  delay in bringing the pending motion.

1    Defendant's position that plaintiff made a mistake of law which cannot constitute

2    excusable neglect is unavailing.  First, defendant's contention is not supported by precedent in the

3    Ninth Circuit because mistakes of law by counsel have been found, under some circumstances, to

4    constitute excusable neglect.  *Pioneer*, 507 U.S. at 392 (holding that excusable neglect is an

5    elastic concept and may extend to circumstances where moving counsel made a mistake in

6    construing the applicable rules); *see also Romero v. San Bernadino Cnty. Sheriff's Dep't*, No. 12-

7    cv-06433-MMM-JEM, 2014 WL 13133488, at *8 (C.D. Cal. Mar. 6, 2014) (collecting cases

8    where an attorney's mistake of law or carelessness was found to constitute excusable neglect

9    given the circumstances).  Second, defendant's argument does not address the relevant

10   circumstance that, here, the relief sought in a Rule 54 motion would have been duplicative in light

11   of the damages awarded by the judgment the court entered.  In essence, defendant's position is

12   that plaintiff was required to file and fully brief a motion for duplicative relief prior to the filing

13   of a notice of appeal contesting damages, and further that plaintiff's failure to waste this court's

14   scarce judicial resources does not constitute "excusable neglect."  The court is not persuaded and

15   determines that plaintiff's reason for its delay in bringing the pending motion in this case weighs

16   heavily in favor of a finding of excusable neglect.

17       2.    Prejudice

18   Plaintiff argues that defendant has not suffered prejudice from the delay in filing the

19   present motion because defendant was aware before trial that plaintiff would alternatively file a

20   motion for attorneys' fees if those fees were found not to be recoverable as damages.  (Doc. No.

21   152 at 7–8); (Doc. No. 84 at 11–12) (final pretrial order noting that plaintiff had included

22   attorneys' fees in its prayer for relief).  Plaintiff also disclosed its basis for a Rule 54 motion in its

23   arguments presented to the Ninth Circuit on appeal.  (Doc. No. 139 at 11.)  Defendant contends

24   that plaintiff's failure to file a timely Rule 54 motion prevented this court from issuing a ruling on

25   that motion prior to the Ninth Circuit's decision on appeal.  (Doc. No. 153 at 9.)

26   The court recognizes that defendant incurred litigation costs in connection with its appeal

27   seeking to reduce the damages obtained by plaintiff in this case to the extent those damages

28   awarded included attorneys' fees.  *See Werner v. Evolve Media, LLC*, No. 18-cv-07188-VAP-SK,

2020 WL 7890835, at *3 (C.D. Cal. Nov. 10, 2020) (finding that past litigation costs can contribute to undue prejudice).  But the court also considers the substantial prejudice to plaintiff if its motion were denied:  plaintiff would be put in the novel position where its failure to seek duplicative relief ended up preventing it from recovering attorneys' fees that it expended in successfully pursuing this litigation.  *See Lemoge v. United States*, 587 F.3d 1188, 1196 (9th Cir. 2009) (holding that district courts, when evaluating excusable neglect under the *Pioneer* factors in the Rule 60(b) context, should consider prejudice to the moving party).  The court also notes that it is not clear that defendant's appellate expenditures are "for naught" since, as a result of the appeal, it was able to foreclose one theory upon which plaintiff could recover attorneys' fees.  *See Becerra v. Nat'l Recovery Sols., LLC*, No. 13-cv-01547-BEN-DHB, 2014 WL 3700210, at *5 (S.D. Cal. July 24, 2014) (holding that granting leave to amend a complaint did not prejudice the defendant because the past litigation "will not be for naught" because it resulted in a concession that some claims lacked merit).  Therefore, balancing the substantial prejudice to plaintiff and the limited prejudice to defendant, the court concludes that consideration of this factor does not weigh against a finding of excusable neglect on the part of plaintiff.

       3.    Length of Delay

Plaintiff contends that the length of its delay should be viewed as only 14 days, since that is the time which passed after the Ninth Circuit's mandate was entered before it filed the pending motion.  (Doc. No. 152 at 9.)  Plaintiff also argues that the delay has had no material impact on proceedings, even if the full 18-month period of time was considered.  (*Id.*)  Defendant argues that an 18-month delay is substantial and weighs against a finding that plaintiff's delay was a result of excusable neglect.  (Doc. No. 153 at 9.)  Though the delay in filing the pending motion was certainly not insubstantial, that delay in fact had no impact on judicial proceedings because the case had already been closed by the entry of judgment at the time plaintiff was required to file its Rule 54 motion.  *See Harris v. Costco Wholesale Corp.*, No. 04-cv-00409-MJL-WM, 2006 WL 8455282, at *2 (S.D. Cal. July 18, 2006) (finding that the delay in filing a Rule 54 motion for attorneys' fees had no impact on judicial proceedings where case had already been terminated); *Ryan v. Whiteriver Unified Sch. Dist. No. 20*, No. 19-cv-08020-PCT-DJH, 2019 WL 13252612, at

1  *3 (D. Ariz. Dec. 17, 2019) (noting that delays as long as seven months have been held as

2  reasonable in the Ninth Circuit). The court thus finds that consideration of this factor weighs at

3  most slightly, if at all, against a finding of excusable neglect, since the length of the delay is

4  largely offset by its lack of impact on the proceedings.

5          4.      Good Faith

6          Defendant next contends that plaintiff's actions have not been taken in good faith insofar

7  as it is attempting to get "a second bite at the apple" by waiting to file the pending motion until

8  after its alternative argument failed on appeal. (Doc. No. 153 at 10–11.) Plaintiff argues that it

9  has consistently disclosed its position that it would have filed a Rule 54 motion if the undersigned

10 had not awarded attorneys' fees as an aspect of damages in this action. (Doc. No. 152 at 9.)

11         "Good faith considers the presence or absence of tactical or strategic motives behind the

12 delay." *Galfayan v. State Farm Gen. Ins. Co.*, No. 2:23-cv-01991-RGK-SK, 2024 WL 5317267,

13 at *2 (C.D. Cal. Apr. 23, 2024). Defendant has provided no evidence or authority suggesting that

14 plaintiff's reason for delay here was to gain a tactical advantage. *See Chloe SAS v. Sawabeh Info.*

15 *Servs. Co.*, No. 11-cv-04147-MMM-MAN, 2015 WL 14094707, at *4 (C.D. Cal. Apr. 21, 2015)

16 (finding that the good faith factor weighed in favor of extending time where there was no

17 evidence of bad faith) (citing *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 699 (9th Cir.

18 2001) (holding that bad faith was not established where there was no showing that a party

19 "deliberately tried to manipulate the legal system"), *overruled on other grounds by Egelhoff v.*

20 *Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001)).

21         Through its pending motion, plaintiff is raising an alternative basis for the award of

22 attorneys' fees which, as noted above, it also raised on appeal and is certainly not attempting to

23 relitigate issues that have already been resolved. *Cf. Yeoman v. Ikea U.S.A. West, Inc.*, No. 11-cv-

24 00701-WQH-BGS, 2014 WL 1128252, at *7 (S.D. Cal. Mar. 20, 2014) (declining to find either

25 good faith or bad faith where the defendant sought to belatedly file a summary judgment motion

26 on the same legal basis that the court had rejected in addressing defendant's prior motion to

27 decertify the plaintiff class). Therefore, the court finds that plaintiff's actions here have been

28 taken in good faith. Consideration of this factor weighs in favor of a finding of excusable neglect.

1    Balancing all of the factors addressed above, the court concludes that plaintiff's strong

2  reason for delay and the substantial prejudice it would face should the court deny its motion

3  render any neglect on its part in filing the pending motion excusable.[5]  Accordingly, the court will

4  now turn to consider the merits of plaintiff's Rule 54 motion.

5  **B.    California Civil Code § 1717**

6    Plaintiff argues that it is entitled to attorneys' fees in this action pursuant to California

7  Civil Code § 1717 because it was the prevailing party on a breach of contract claim and the

8  parties' PSA contains an attorneys' fees clause.  (Doc. No. 139 at 12.)  In opposition, defendant

9  argues that this action was brought based upon a separate contract, namely the ADR, which did

10  not contain such a clause.  (Doc. No. 146 at 11.)  The Ninth Circuit recently approved of a

11  procedure for evaluating whether there exists a basis for attorneys' fees under § 1717 and

12  pursuant to that procedure the court is to first consider which claims fall within the scope of the

13  attorneys' fees clause at issue before considering which party prevailed in the action.  *G.P.P., Inc.*

14  *v. Guardian Prot. Prods., Inc.*, 126 F.4th 1367, 1375 (9th Cir. 2025); *see also In re Penrod*, 802

15  F.3d 1084, 1087 (9th Cir. 2015) (holding that § 1717 applies where (1) the action at issue was "on

16  a contract[;]" (2) that contract contains a provision stating that attorneys' fees incurred to enforce

17  the contract shall be awarded to one of the parties; and (3) the party seeking fees prevailed).

18  Defendant's argument centers on the first step of this test, namely whether the attorneys' fees

19  clause in the parties' PSA covers the breach of ADR claim that plaintiff prevailed upon at the trial

20  of this action.  (Doc. No. 146 at 11.)

---

21  [5] Defendant separately argues that plaintiff has not shown excusable neglect as to the attorneys'

22  fees sought which were incurred after the trial commenced, pointing out that plaintiff had not
included the fees incurred during trial and post-trial litigation in its original presentation of

23  damages to this court in its proposed findings of fact.  (Doc. Nos. 111 at 22–23; 139 at 17; 153 at
12–13.)  Defendant offers no authority to support its proposition that the court may find a lack of

24  excusable neglect as to a portion of plaintiff's pending motion.  The court however notes that to
the extent plaintiff's motion seeks fees incurred after trial commenced, it is akin to a

25  supplemental motion for attorneys' fees incurred after an initial motion for fees is filed.  Here, at
trial plaintiff had presented evidence of attorneys' fees incurred prior to May 25, 2022.  *See Sw.*

26  *Fair Hous. Council v. WG Scottsdale LLC*, No. 19-cv-00180-TUC-RM, 2024 WL 2746964, at

27  *3–4 (D. Ariz. May 29, 2024) (finding that Rule 54 does not preclude the efficient approach of
filing an initial motion for fees and, outside of the 14-day time requirement, a later supplemental

28  motion).

Plaintiff contends that the attorneys' fees clause of the PSA provides for an award of attorneys' fees in any action "for enforcement or interpretation of any of the terms or conditions" of the PSA. (Doc. No. 139 at 12.) It argues that the ADR is an express condition of the PSA and that breach of the ADR is thus covered by the PSA's attorneys' fees clause. (Doc. No. 139 at 13.) Defendant counters that this action was brought by plaintiff to enforce an indemnity provision contained in the ADR, which is a separate contract, and that performance under that contract was not a condition or term of the PSA. (Doc. No. 146 at 15–16.)

"Before Section 1717 comes into play, it is necessary to determine whether the parties entered an agreement for the payment of attorney's fees, and if so, the scope of the attorney's fees agreement. . . . This determination requires us to apply traditional rules of contract interpretation." *Mountain Air Enters. v. Sundowner Towers, LLC*, 3 Cal. 5th 744, 752 (2017) (internal quotation marks omitted). "Whether a contractual attorney fee clause provides for a fee award in a particular case is a question of contract interpretation. . . . Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation." *Owaidah v. Mazzei*, No. 18-cv-00246-KK, 2020 WL 2405277, at *2 (C.D. Cal. Apr. 9, 2020) (internal quotation marks omitted). "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the mutual intention of the parties." *TIG Ins. Co. of Mich. v. Homestore, Inc.*, 137 Cal. App. 4th 749, 755 (2006) (quoting *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18 (1995)).

Under California law, when multiple contracts are executed as part of a single transaction, they may be "construed together" to clarify the meaning of those contracts. *Alberto v. Cambrian Homecare*, 91 Cal. App. 5th 482, 490 (2023) (internal quotation marks omitted) ("Under Civil Code section 1642, it is the general rule that several papers relating to the same subject matter and executed as parts of substantially one transaction, are to be construed together as one contract."); *see also Cortes v. Univ. & State Emps. Credit Union*, No. 22-cv-00444-LAB-DEB, 2023 WL 12009972, at *4–5 (S.D. Cal. Mar. 13, 2023) (interpreting two agreements entered as part of the same transaction so as to make the terms consistent across the agreements). Contracts which are jointly executed are generally construed in light of each other. *Mountain Air Enters.*, 3 Cal. 5th at

14

1    759 (citing *Pankow Constr. Co. v. Advance Mortg. Corp.*, 618 F.2d 611, 616 (9th Cir. 1980)).

2    However, California courts have been careful to note that construing contracts together does not

3    render them a single contract for all purposes. *Id.*; *see also Ahern v. Asset Mgmt. Consultants,*

4    *Inc.*, 74 Cal. App. 5th 675, 693–94 (2022) (explaining that the terms of one agreement are not

5    necessarily incorporated into all other agreements that form distinct parts of a single transaction).

6    Rather, § 1642 is "a rule to aid in the interpretation of contracts and to allow the construction of

7    two contracts together in pursuit of that purpose." *Hartford Accident & Indem. Co. v. Sequoia*

8    *Ins. Co.*, 211 Cal. App. 3d 1285, 1300 (1989).

9         "[W]e first consider the mutual intention of the parties at the time the contract providing

10   for attorney[s'] fees was formed[,]" initially considering the writing of the PSA alone. *Mountain*

11   *Air Enters.*, 3 Cal. 5th at 752 (citing Cal. Civ. Code § 1636).  The parties' PSA provides for

12   attorneys' fees in clause 17.4:

13
14   > In the event of any action between Buyer and Seller for enforcement
     > or interpretation of any of the terms or conditions of this Agreement,
     > the prevailing party in such action shall be entitled to recover its
15   > reasonable costs and expenses, including without limitation court
     > costs and attorneys' fees actually incurred, as awarded by a court of
16   > competent jurisdiction.

17   (Doc. No. 139-1 at 189.)

18        Next, the court considers whether the ADR was a term or condition of the PSA.  In the

19   PSA, the buyer's (plaintiff's) conditions are listed in section 6, with the listed requirements in that

20   section "constitut[ing] conditions to the obligations of Buyer under this Agreement."  (Doc. No.

21   139-1 at 174.)  Included in those conditions is provision 6.2, which requires that the Seller deliver

22   the closing documents listed in section 4.5 of the PSA into escrow and perform all of its

23   covenants and obligations under the PSA.  (*Id.* at 177.)  As part of the third amendment to the

24   PSA, the parties added provision 4.5.5 which requires that defendant deliver, as part of the

25   closing documents, the ADR that is at issue in this case.  (*Id.* at 221.)  Provision 4.5.5 requires

26   that the ADR be "in form and substance acceptable to buyer."  (*Id.*)  From this, the court

27   concludes that the requirement of the ADR being delivered in a form and substance acceptable to

28   plaintiff is a condition of the parties' PSA.  *See Int'l Bhd. of Teamsters*, 957 F.3d at 1044 (finding

that language which stated that terms of an agreement "shall only become operative if all of the conditions set forth in paragraph 15 are satisfied" clearly and unambiguously made that paragraph's stipulations conditions precedent); (*see also* Doc. No. 118 at 52) (recognizing that the structure of the PSA allowed AGK alone to reject the ADR and kept the parties' agreement to the PSA "contingent"). Therefore, the court also concludes that this action to enforce the ADR is within the scope of the attorneys' fees clause appearing in the parties' PSA.

Defendant argues that *performance* of the ADR was not a term or condition of the PSA and that, therefore, an action for breach of the ADR is not an action to enforce or interpret a term or condition of the PSA. (Doc. No. 153 at 13–14.) Defendant posits that the PSA only required that it deliver the ADR to plaintiff but did not require performance of the ADR: rather, according to defendant, the ADR was a separate contract between the parties. (*Id.*) Defendant cites no authority to support the proposition that a contract may require delivery of a closing document but not the performance of the obligations set forth in that document.

Defendant's argument in this regard is unpersuasive. Rather, the court finds the conclusion of the California Supreme Court under somewhat analogous circumstances as those presented here to be instructive:

> We are not persuaded by Mountain Air's argument that attorney fees are not available because the pertinent fees clause appears in the option agreement, and not the repurchase agreement on which it brought suit. In determining whether a contract contains an applicable attorney fees provision, courts have "construe[d] together several documents concerning the same subject and made as part of the same transaction [citations] even though the documents were not executed contemporaneously [citation] and do not refer to each other." (*Boyd v. Oscar Fisher Co.* (1989) 210 Cal.App.3d 368, 378, 258 Cal. Rptr. 473; see Civ. Code, § 1642.) Moreover, contrary to the dissent's suggestion [citation omitted], merely construing these two agreements together would not undermine the trial court's finding of novation. "While it is the rule that several contracts relating to the same matters are to be construed together (Civ. Code, sec. 1642), it does not follow that for all purposes they constitute one contract." (*Malmstedt v. Stillwell* (1930) 110 Cal. App. 393, 398, 294 P. 41.) "'[J]oint execution would require the court to construe the two agreements in light of one another; it would not merge them into a single written contract.'" (*Pankow Const. Co. v. Advance Mortg. Corp.* (9th Cir.1980) 618 F.2d 611, 616.)

\* \* \*

16

1
2
3
4
5
6
7
8
9

  In sum, we decline to take an overly formalistic approach to deciding whether a prevailing party is entitled to contractual attorney fees. Certainly, any inquiry begins with the language of the attorney fees provision itself. (*See Santisas, supra*, 17 Cal.4th at pp. 607-608, 71 Cal.Rptr.2d 830, 951 P.2d 399.) However, as this case illustrates, a complicated and difficult set of facts may sometimes obscure whether a claim on which attorney fees are incurred is within the scope of a fees provision. (*See id.* at p. 602, 71 Cal. Rptr.2d 830, 951 P.2d 399; *see also Xuereb v. Marcus & Millichap, Inc., supra*, 3 Cal. App.4th at p. 1344, 5 Cal. Rptr.2d 154 [none of the various tortious causes of action was "'quite independent of the basic contractual arrangement'"].) Thus, if the facts in future cases warrant it, courts "should consider the pleaded theories of recovery, the theories asserted and the evidence produced at trial, if any, and also any additional evidence submitted on the motion in order to identify the legal basis of the prevailing party's recovery." (*Boyd v. Oscar Fisher Co., supra*, 210 Cal. App.3d at p. 377, 258 Cal. Rptr. 473.)

10  *Mountain Air Enters.*, 3 Cal. 5th at 759–761; see also *Nevin v. Salk*, 45 Cal. App. 3d 331, 338

11 (1975) (looking to the relationship of documents covering a transaction to interpret the scope of

12 an attorneys' fee clause and concluding that a promissory note and mortgage which were

13 executed contemporaneously with an agreement of sale comprised a single contract under § 1642

14 such that an attorneys' fees clause from the note covered claims based on the agreement of sale).

15   Indeed, the California Court of Appeals has rejected an argument similar to the one

16 advanced here by defendant that the PSA required delivery of the ADR but not *performance* of

17 that contract. *See IMO Dev. Corp. v. Dow Corning Corp.*, 135 Cal. App. 3d 451, 463 (1982). In

18 that case, the state appellate court first found that the sales agreement and a promissory note at

19 issue constituted a single transaction and therefore should be construed together pursuant to §

20 1642, stating:

21
22
23
24
25

  Even a cursory review of the documents demonstrates that the Sales Agreement and the note involved in this case are part of a single transaction. The Sales Agreement provides in paragraph 11 that Dow Corning will make a loan to IMO of not more than $250,000 *on condition* that IMO execute a promissory note in the form attached to the agreement, and that said note should provide that it shall be due and payable not later than December 31, 1976. . . . Thus, the note and the Sales Agreement constitute a single transaction as a matter of law.

26 *Id.*, at 463 (emphasis added). The state appellate court in *IMO Dev. Corp.* went on to conclude

27 that, because the Sales Agreement "provided for the execution of the note, the payment of that

28 /////

1  note necessarily constituted one of the obligations of the Sales Agreement and Dow Corning's

2  suit to collect the note also constituted a suit to enforce the Sales Agreement." *Id.*

3      Similarly, in the present case, the court has concluded that the PSA was conditioned on

4  the execution of the ADR, rendering it part of a single transaction. Reading the PSA and the

5  ADR together, the requirement under the PSA to execute the ADR renders performance of the

6  ADR an obligation under the parties' PSA.[6] The court therefore rejects defendant's contention

7  and concludes that performance of the ADR was a term or condition of the parties' PSA.

8      Because the performance of the ADR was a term or condition of the PSA, the court also

9  finds that this action brought by plaintiff for breach of the ADR was covered by the attorneys'

10  fees clause in the PSA. It is undisputed that the attorneys' fees clause in the PSA, if applicable,

11  provides for attorneys' fees to be awarded to the prevailing party. (Doc. No. 139-1 at 189)

12  ("[T]he prevailing party in such action shall be entitled to recover its reasonable costs and

13  expenses, including without limitation court costs and attorneys' fees actually incurred[.]") It is

14  also undisputed that plaintiff was the prevailing party here within the meaning of California Civil

15  Code § 1717. *Hsu v. Abbara*, 9 Cal. 4th 863, 875–76 (1995) ("[W]hen the results of the litigation

16  on the contract claims are *not* mixed—that is, when the decision on the litigated contract claims is

17  purely good news for one party and bad news for the other—the Courts of Appeal have

18  recognized that a trial court has no discretion to deny attorney fees to the successful litigant[]")

19

---

20  [6] The undersigned is also persuaded that this action necessarily involved interpreting other terms

21  and conditions of the PSA. *See Mountain Air Enters.*, 3 Cal. 5th at 758–59 (holding that an attorneys' fees provision in one contract covered a cause of action on a separate contract where

22  the action necessarily implicated the validity of both contracts which were construed together). The undersigned previously analyzed in its findings of fact and conclusions of law whether

23  plaintiff had performed under the PSA to determine whether "AGK performed under the contract at issue." (Doc. No. 118 at 57.) The undersigned also analyzed the structure of the PSA as a

24  whole to determine whether the indemnity provision within the ADR was unconscionable, as defendant had argued. (*Id.* at 54–56.) This litigation required interpreting the terms of the PSA.

25  Applying the decisions of the California Supreme Court and the plain language of the attorneys' fees clause, this requirement to interpret both contracts supports a finding that the attorneys' fees

26  provision in the PSA covers the instant action. *See Mountain Air Enters.*, 3 Cal. 5th at 758–61

27  (instructing trial courts to consider "pleaded theories of recovery, the theories asserted[,] and the evidence produced at trial" to determine whether a cause of action falls within the scope of an

28  attorneys' fees provision in a certain contract).

1    (emphasis in original); (Doc. No. 118 at 93) (entering judgment in plaintiff's favor on its breach

2    of contract claim).  Therefore, California Civil Code § 1717 authorizes the award of attorneys'

3    fees to plaintiff in this action.

4    **C.      Reasonableness of Attorneys' Fees**

5           In addressing the reasonableness of the attorneys' fees sought by plaintiff, the court begins

6    by recognizing that the lodestar analysis has not previously been conducted as to those fees.

7    Rather, plaintiff presented proof of the attorneys' fees and costs it actually incurred only as a

8    component of its claim for damages at the trial of this action.  (Doc. No. 118 at 82 n.48)

9    ("Because the attorneys' fees AGK seeks to recover are part of an indemnification damages

10   award and are not sought by way of a noticed motion for attorneys' fees filed after trial, the court

11   need not conduct a lodestar analysis in this case.")  Plaintiff now seeks an award of attorneys'

12   fees and costs in the total amount of $1,423,058.36.[7]  Plaintiff does not separate its request into

13   one for attorneys' fees in one amount and costs in another:  rather, plaintiff has merely attached

14   161 pages of timekeeping records to its motion without providing a precise accounting of the total

15   amount of $1,423,058.36 it seeks.  (Doc. No. 139-1 at 6–166; *see also* Doc. No. 139 at 17

16   ("Combining both the […] invoices together, AGK seeks a total of $1,423,058.36 in this matter.")

17   The lodestar approach is applied to the determination of an award under California Civil Code

18   § 1717.  *PLCM Grp.*, 22 Cal. 4th at 1095.  Therefore, the court will conduct a lodestar analysis to

19   assess the reasonableness of plaintiff's requested attorneys' fees.

20          "In determining reasonable attorney fees under the lodestar method, the court first

21   determines the number of hours reasonably expended by the attorneys and then multiplies this

22   figure by the reasonable hourly rate prevailing in the community for similar work."  *Cates v.*

23

---

24   [7]  Neither plaintiff nor defendant have addressed the issue of the costs incurred in this action in
     their briefs, though it appears to the court that plaintiff seeks an award of costs for expenses such

25   as lodging incurred to attend motion hearings.  (*See* Doc. No. 139-1 at 122.)  "[T]he burden is on
     the losing party to demonstrate why the costs should not be awarded."  *Peterson v. Nevada Cnty.,*

26   *Cal.*, No. 2:19-cv-00949-JAM-JDP, 2023 WL 7167779, at *2 (E.D. Cal. Oct. 31, 2023) (quoting

27   *In re Ricoh Co., Ltd. Pat. Litig.*, 661 F.3d 1361, 1364 (Fed. Cir. 2011)).  Therefore, because
     defendant has not objected to the costs sought by plaintiff pursuant to the pending motion, the

28   court will only consider the reasonableness of attorneys' fees sought.

1    *Chiang*, 213 Cal. App. 4th 791, 820 (2013).  The court has an independent duty to review the

2    evidence to determine the reasonableness of the hours requested in each case.  *See id.*, at 436–37;

3    *In re Morlas*, No. 09-cv-00695-JAM-DAD, 2010 WL 3069926, at *2 (E.D. Cal. Aug. 5, 2010)

4    (finding in the § 1717 context that the court has an independent duty to reach its own lodestar

5    value).

6         1.    Calculation of the Initial Lodestar

7         Following the lodestar method, the court will first determine the reasonable number of

8    hours expended and the reasonable hourly rates charged in this case to find an initial lodestar

9    value.

10         a.    *Reasonable Number of Hours Expended*

11         To determine the reasonableness of the hours expended, the court must "make an initial

12    determination of the actual time expended," then "ascertain whether under all the circumstances

13    of the case the amount of actual time expended and the monetary charge being made for the time

14    expended are reasonable."  *Nightingale v. Hyundai Motor Am.*, 31 Cal. App. 4th 99, 104 (1994).

15    Under California law, the prevailing party must first demonstrate that the hours spent were

16    reasonable and necessary, at which point the burden shifts to the challenging party to identify the

17    specific items challenged.  *Martinez v. Ford Motor Co.*, No. 1:18-cv-01607-NONE-JLT, 2021

18    WL 3129601, at *4 (E.D. Cal. July 23, 2021) (citing *Premier Med. Mgmt. Sys. Inc. v. Cal. Ins.*

19    *Guarantee Ass'n*, 163 Cal. App. 4th 550, 564 (2008)).  Here, the court finds that plaintiff has met

20    its initial burden to demonstrate that its hours expended during the litigation, including in the

21    preparation of its pending motion for attorneys' fees, were reasonable and necessary based on its

22    detailed billing statements and the absence of a clear indication that those records are erroneous.

23    *See Horsford v. Bd. of Trs. of Cal. State Univ.*, 132 Cal. App. 4th 359, 396 (2005) ("We think the

24    verified time statements of the attorneys, as officers of the court , are entitled to credence in the

25    absence of a clear indication the records are erroneous."); (*see* Doc. No. 139-1 at 1–125)

26    (detailing 1,499 hours[8] expended prior to April 21, 2020); (Doc. No. 139-1 at 135–54) (detailing

27

─────────────────────

28    [8]  The court reached this number after a manual review of the documentation provided by
     plaintiff.

20

1    553.9 hours expended from September 2, 2020 to May 25, 2022); (Doc. No. 139-1 at 154–64)

2    (detailing 403.9 hours expended during trial and post-trial litigation)[9]; (Doc. No. 139-1 at 132)

3    (detailing 42.9 hours expended in preparation of the pending motion).  Accordingly, the burden

4    shifts to defendant to show those hours were not reasonably expended.

5        Defendant does not dispute the reasonable number of hours expended by plaintiff's

6    attorneys in this action but instead limits itself to other objections such as the hourly rates charged

7    and the degree of success achieved by plaintiff in this litigation.  (Doc. No. 146 at 20.)  Therefore,

8    the court concludes that defendant has not carried its burden of showing that the attorney hours

9    expended by plaintiff's counsel were not reasonably expended.

10                    b.    *Reasonable Hourly Rates*

11        Defendant does argue that the hourly rates charged by counsel for plaintiff are higher than

12    the market rate in the Eastern District of California.  (Doc. No. 146 at 21.)  In particular,

13    defendant contends that the rates charged by similarly experienced attorneys in Sacramento are

14    approximately 20 to 40% less than those charged by plaintiff's counsel here.  (*Id.*)  Plaintiff

15    counters that the hourly rates charged by its counsel are consistent with rates approved by judges

16    of the Eastern District of California.  (Doc. No. 147 at 8.)  In support of its pending motion,

17    plaintiff provides a sworn declaration from one of its attorneys of record in this case, Timothy

18    Gorry.  (Doc. No. 139-1.)  Attorney Gorry declares that plaintiff was represented by the following

19    attorneys from the law firms Michelman & Robinson, LLP and Theodora Oringher PC.

20        •    Timothy J. Gorry, a current partner at Michelman & Robinson LLP who has 36

21            years of civil litigation and complex litigation experience.  His current standard

22            billing rate is $1,260 per hour, but in this action he billed plaintiff an hourly rate of

23            between $595 to $700.

24        •    Jon-Jamison Hill, a current partner at Michelman & Robinson LLP and the

25            practice leader for the firm's commercial and business litigation group who has 26

26

27    ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
      [9]  The court notes that these hours appear to not involve the separate litigation work of plaintiff's
28    appellate counsel, which is not placed at issue in the motion pending before the court.  (Doc. No.
      139-1 at 154–64.)

                                                21

years of civil litigation experience.  Attorney Hill's rate for work performed on this action ranged from $595 to $675.

- Jackie M. Joseph, a senior attorney at Theodora Oringher PC who has 35 years of civil litigation and complex litigation experience.  Attorney Joseph's hourly rate in this case ranged from $550 to $575.

- Edward E. Johnson, a senior attorney at Theodora Oringher PC who has 20 years of experience in civil litigation.  Attorney Johnson's hourly rate in this action ranged from $550 to $575.

- Adam M. Korn, an associate attorney in Michelman & Robinson LLP's commercial and business litigation group with four years of civil litigation experience.  Attorney Korn's hourly rate billed in this action ranged from $435 to $480.

- Reuben Ginsburg, counsel at Michelman & Robinson LLP who specializes in appellate work and has 36 years of experience.  Attorney Ginsburg's hourly rate is $665.

(Doc. No. 139-1 at 3–4.)  Attached to attorney Gorry's declaration are detailed time records and invoices for the work performed by each of plaintiff's counsel.  (*Id.* at 5–166.)  That declaration does not provide the place of employment, experience, or hourly rate for several timekeepers that the court has determined, in its review of plaintiff's time records, performed work on behalf of plaintiff in this case.  (*See, e.g., id.* at 124) (listing attorneys such as Maura J. Riley and others who are not identified by attorney Gorry in his declaration).  However, the court has also determined that plaintiff is seeking fees for these attorneys' work based on their request for

/////

/////

/////

/////

/////

/////

22

1  $1,423,058.36 in attorneys' fees and costs, which includes all of the attorney and staff hours listed

2  in its time records.  (Doc. No. 139 at 20; Doc. No. 139-1.)[10]

3       As noted at the outset, reasonable attorneys' fees sought under California Civil Code §

4  1717 are calculated according to the prevailing market rates in the relevant legal community.

5  *Linde, LLC*, 2019 WL 4879206, at *3 (using the relevant legal community to determine

6  reasonableness of attorneys' fees in the § 1717 context); *PLCM Grp.*, 22 Cal. 4th at 1097 (same).

7  Generally, the relevant community is the "forum in which the district court sits[,]" in this case the

8  Eastern District of California.  *Camacho*, 523 F.3d at 979.[11]

9       In support of its hourly rates, plaintiff cites to cases in which judges of this court have

10  approved rates similar to those sought by plaintiff in this case.[12]  (Doc. No. 139 at 18); *see also*

11  *Emmons v. Quest Diagnostics Clinical Lab'ys, Inc.*, No. 1:13-cv-00474-DAD-BAM, 2017 WL

12

13  [10]  Plaintiff's submission is consistent with what California courts have held to be sufficient to
    shift the burden to defendant to challenge.  *See Horsford v. Bd. of Trs. of Cal. State Univ.*, 132

14  Cal. App. 4th 359, 396 (2005) ("We think the verified time statements of the attorneys, as officers
    of the court , are entitled to credence in the absence of a clear indication the records are

15  erroneous."); *see also Syers Props III, Inc.*, 226 Cal. App. 4th at 699–700 (noting that time
    records are not required under California law and that there is "no required level of detail that

16  counsel must achieve.")  As noted, defendant has mounted no such challenge to the attorney
    hours expended here.

17

18  [11]  In the context of Song-Beverly claims, the undersigned has declined to employ the federal law
    framework of determining a prevailing market rate in the forum in which the district court sits

19  and then determining whether the rates requested by counsel are reasonable in light of that
    prevailing market rate.  *See Heffington v. FCA US LLC*, No. 2:17-cv-00317-DAD-JLT, 2020 WL

20  5017610, at *6 n.5 (E.D. Cal. Aug. 25, 2020).  California courts, when considering the award of
    attorneys' fees pursuant to the Song-Beverly Act for instance, look to a number of factors such as

21  the complexity of the case, results achieved, and the skill of the attorney to determine if an hourly
    rate was reasonable.  *See Goglin v. BMW of N. Am., LLC*, 4 Cal. App. 5th 462, 470 (2016).

22  However, in the § 1717 context, the California Supreme Court has held that it is proper for a trial
    court to determine reasonable hourly rates by finding the appropriate prevailing market rate.

23  *PLCM Grp.*, 22 Cal. 4th at 1096–97 (holding that the trial court did not err by calculating the
    lodestar as the number of hours expended multiplied by the prevailing market rate); *Ketchum*, 24

24  Cal. 4th at 1132 ("We expressly approved the use of prevailing hourly rates as a basis for the
    lodestar[.]")  The court adopts this approach in this order and will determine whether the

25  requested attorneys' fees are reasonable based on the prevailing market rate in the Eastern District
    of California.

26

27  [12]  Though these cases do not uniformly apply California law, the court notes that they serve as

28  evidence of what the prevailing market rate for attorneys is in the Eastern District of California.

749018, at *8 (E.D. Cal. Feb. 27, 2017) (finding, for counsel in a class action, rates of $545 to $695 for senior counsel and partners were reasonable); *Am. Multi-Cinema, Inc. v. Manteca Lifestyle Ctr., LLC*, 2:16-cv-01066-TLN-KJN, 2024 WL 1312209, at *3 (E.D. Cal. Mar. 26, 2024) (reducing hourly rates to $700 for partners and $500 for associates); *Kang v. Credit Bureau Connection, Inc.*, No. 1:18-cv-01359-SKO, 2023 WL 6811994, at *12 (E.D. Cal. Oct. 16, 2023) (concluding that hourly billing rates for attorneys in the Eastern District of California range from $200 to $750).

Defendant does not cite to any cases in the Eastern District of California discussing average hourly rates and instead relies only on the sworn declaration of its attorney of record in this case, Frank R. Perrott.  (Doc. No. 146 at 21.)  Attorney Perrott declares that, "based on his personal experience" and knowledge of the hourly rates of "other local attorneys[,]" plaintiff's counsel's rates exceed the standard billing rates in this forum by 20 to 40%.  (Doc. No. 146-2 at ¶ 7.)  This barebones declaration is unpersuasive in light of the comprehensive surveys other judges of this court have performed in reaching conclusions that indicate the hourly billing rates that plaintiff's counsel seek here are reasonable for the Eastern District.  *See, e.g., Sunbelt Rentals, Inc.*, 2023 WL 5103739, at *5 (collecting cases that find hourly rates from $200 to $750 to be reasonable in the Eastern District); *BMO Bank N.A. v. Cheema*, No. 1:24-cv-00634-SAB, 2024 WL 4357004, at *9 (E.D. Cal. Oct. 1, 2024) (same), *report and recommendation adopted*, No. 1:24-cv-00634-KES-SAB, 2024 WL 4873520 (E.D. Cal. Nov. 22, 2024).  The court therefore concludes that the hourly rates sought by plaintiff in the pending motion are reasonable.

c.    *Lodestar Calculation*

Applying the reasonable hourly rates to the number of hours reasonably billed in this action as reflected in plaintiff counsel's detailed billing records, the court calculates the lodestar amount to be $1,394,298.50 as shown in the following table:

/////

/////

/////

/////

| Attorney/Staff[13] | Reasonable Rate in Eastern District of California[14] | Hours Reasonably Billed | Amount Billed |
|---|---|---|---|
| Timothy Gorry (before 8/1/2020) | $625.00 | 940.1 | $587,562.50 |
| Jon-Jamison Hill (before 8/1/2020) | $550.00 | 5.1 | $2,805.00 |
| Jon-Jamison Hill (before 8/1/2020) | $592.12 | 25.7 | $15,217.50 |
| Jackie M. Joseph | $550.00 | 105.1 | $57,805.00 |
| Jackie M. Joseph | $250.00 | 52.3 | $13,075.00 |
| Edward E. Johnson | $575.00 | 28.2 | $16,215.00 |
| Edward E. Johnson | $576.96 | 67.7 | $39,060.00 |

[13]  Attorney Gorry did not refer to attorney Maura L. Riley, Paul Sorce, and Gabriella J. Burkhalter in his declaration, though the court's review of plaintiff's time records reveals that each did significant amounts of work in this case.  (Doc. No. 139-1 at 35, 39, 66, 69, 124.)  The court has ascertained from the records submitted that the latter two individuals performed paralegal work on the case.  As noted above, it appears from the total amount that plaintiff is requesting be awarded that it is seeking to recover the fees associated with the work performed by attorney Riley and paralegals Source and Burkhalter.  The court finds that the rate for attorney Riley of $328.18 is reasonable and consistent with rates that the undersigned has previously found to be reasonable for junior associate attorneys in this district.  *See Stiles v. Walmart, Inc.*, 699 F. Supp. 3d 926, 940 (E.D. Cal. 2023) (approving hourly rates of $300 and $350 for an attorney with less than four years of experience) (citing *Mostajo v. Nationwide Mut. Ins. Co.*, No. 2:17-cv-00350-DAD-AC, 2023 WL 2918657, at *11 (E.D. Cal. Apr. 12, 2023)).  However, "[p]aralegals are compensated reasonably between $100 and $250 per hour within this District, depending on experience."  *U.S. ex rel. Terry v. Wasatch Advantage Grp., LLC*, No. 2:15-cv-00799-KJM-SCR, 2025 WL 406589, at *5 (E.D. Cal. Feb. 5, 2025).  Because plaintiff has not provided any evidence indicating the experience of these paralegals, the court will reduce the reasonable hourly rate to the low end of the range rate of $100 per hour in its calculation of the lodestar.  Finally, the court notes that attorney Gorry did not refer to the work performed by Chad C. Cooper in his declaration.  In any event, Cooper appears to have performed support staff work involving preparing electronic document databases for review and those hours are not recoverable as attorneys' fees.  *Firstsource Sols. USA, LLC v. Tulare Reg'l Med. Ctr.*, No. 1:15-cv-01136-DAD-EPG, 2019 WL 2725336, at *8 n.8 (E.D. Cal. July 1, 2019) (finding that preparing electronic document databases for review cannot be recovered as attorneys' fees).

[14]  Several attorneys listed in plaintiff's time records charged different rates for different types of work.  The undersigned has attempted to separate the hours of those attorneys by applicable hourly rate.

| | | | |
|---|---|---|---|
| Maura L. Riley | $328.18 | 187.2 | $61,435.00 |
| Paul Sorce | $100.00 | 41.3 | $4,130.00 |
| Gabriella J. Burkhalter | $100.00 | 13.9 | $1,390.00 |
| Timothy Gorry (after 8/1/2020) | $595.00 | 68.00 | $40,460.00 |
| Timothy Gorry (after 8/1/2020) | $700.00 | 332.7 | $232,890.00 |
| Jon-Jamison Hill (after 8/1/2020) | $595.00 | 130.3 | $77,528.50 |
| Jon-Jamison Hill (after 8/1/2020) | $665.00 | 133.4 | $88,711.00 |
| Reuben Ginsburg | $665.00 | 43 | $28,595.00 |
| Adam Korn | $435.00 | 290.6 | $126,411.00 |
| Adam Korn | $480.00 | 2.1 | $1,008.00 |
| | **Total:** | **2,466.7 hours** | **$1,394,298.50** |

Accordingly, the court will adopt this figure as reflecting its initial lodestar calculation.

2.      Lodestar Adjustment[15]

Defendant also argues that plaintiff achieved only limited success on its claims brought in this action and that the lodestar amount should be reduced accordingly. (Doc. No. 146 at 22–23.) Defendant does not contend that plaintiff failed to prevail on its claims for damages, but rather argues that plaintiff recovered only approximately 30% of its claimed damages after the Ninth Circuit reduced the amount of damages awarded. (*Id.*) Plaintiff counters that it only failed to prevail on a related declaratory relief claim, that it prevailed on its breach of contract claim, and argues that, in coming to this "only 30% recovery" number, defendant mischaracterizes the amount of damages sought by including approximately $1.7 million sought in prejudgment

---

[15] Although the court may include a fee enhancement or reduction to the lodestar, it is not required to do so and "the party seeking a fee enhancement bears the burden of proof." *Ketchum*, 24 Cal. 4th at 1138. Here, plaintiff has not requested a fee enhancement or multiplier. Accordingly, in this order the court limits its discussion of lodestar adjustments to the negative adjustment defendant seeks based upon what it contends was plaintiff's "limited success at trial." (Doc. No. 146 at 23.)

1    interest.  (Doc. No. 147 at 8–9); (Doc. No. 118 at 42) (finding that plaintiff sought $3,523,994.08

2    in damages and $1,722,475.03 in prejudgment interest).

3         The standard under California law for adjusting a lodestar based upon a party's limited

4    success mirrors federal law.  *Sokolow v. Cnty. of San Mateo*, 213 Cal App. 3d 231, 249 (1989)

5    (holding that "under state law as well as federal law, a reduced fee award is appropriate when a

6    claimant achieves only limited success."); *see also Chavez*, 47 Cal. 4th at 989–90 (finding that

7    California law is consistent with federal law in the context of reductions of attorneys' fees for

8    limited success); *Harman v. City & Cnty. of San Francisco*, 158 Cal. App. 4th 407, 416 n.6, 417

9    (2007) (applying the federal test for limited success adjustments and noting that this test has been

10   used in cases awarding fees under California Civil Code § 1717).  The Ninth Circuit has

11   explained that the federal test ("the *Hensley* test") in determining when attorneys' fees should be

12   reduced due to a party's limited success requires the district court to:  (1) determine whether the

13   unsuccessful claims are related to the plaintiff's successful claims; and, if they are related, (2)

14   evaluate the significance of the overall relief obtained by the plaintiff in relation to the hours

15   reasonably expended.  *O'Neal v. City of Seattle*, 66 F.3d 1064, 1068–69 (9th Cir. 1995) (citing

16   *Hensley*, 461 U.S. at 435); *see also Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1174

17   (9th Cir. 2019).

18        As noted, defendant does not argue that plaintiff failed to prevail on any of its claims, but

19   rather only discusses the extent of damages recovered compared to that sought by plaintiff.  (Doc.

20   No. 146 at 22–23.)  Limited success analysis is typically employed where the plaintiff "has

21   prevailed on some claims but not others."  *Cosby v. Autozone, Inc.*, No. 2:08-cv-00505-KJM-

22   DAD, 2016 WL 1626997, at *10 (E.D. Cal. Apr. 25, 2016); *see also Alozie v. Ariz. Bd. of

23   Regents*, No. 16-cv-03944-PHX-ROS, 2021 WL 5578858, at *3 (D. Ariz. Nov. 30, 2021)

24   (applying the *Hensley* test where the "plaintiff has not prevailed on all claims"); *see also Chavez

25   v. IBP, Inc.*, No. 01-cv-05093-RHW, 2005 WL 8158575, at *5 (E.D. Wash. Nov. 28, 2005)

26   (applying *Hensley* and finding that, because the plaintiffs prevailed on all claims, they were

27   entitled to recover fees and costs related to those claims).  Defendant does not provide any

28   authority suggesting that an award of attorneys' fees should be reduced for limited success where

1  the plaintiff prevailed on its claims but received a lesser award of damages than that sought.

2  Indeed, it appears that the Ninth Circuit has rejected such a proposition:

3
> [C]ourts should not reduce lodestars based on relief obtained simply
> because the amount of damages recovered on a claim was less than
4
> the amount requested.  Rather, the relief obtained justifies a lower
> fee if plaintiffs fail to obtain relief on all claims, and if hours spent
5
> on unsuccessful claims were not needed to pursue successful claims.

6  *Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988); *see also Evon v. L. Offs. of Sidney*

7  *Mickell*, 688 F.3d 1015, 1033 (9th Cir. 2012) (reaffirming the Ninth Circuit's previous instruction

8  to district courts that the lodestar should not be reduced simply because the amount of damages

9  recovered was less than that requested); *Wysinger v. Auto. Club of S. Cal.*, 157 Cal. App. 4th 413,

10  431 (2007) ("To reduce the attorneys' fees of a successful party because he did not prevail on *all*

11  his arguments, makes it the attorney, and not the defendant, who pays the costs of enforcing the

12  plaintiff's rights.") (emphasis added) (internal quotation marks omitted).[16]  Accordingly, the court

13  will decline to reduce the lodestar amount on the basis of defendant's contention that plaintiff

14  achieved only limited success in this action.

15  Because the court has concluded that a downward adjustment is not required, the court

16  concludes that the lodestar of $1,394,298.50 is a reasonable award of attorneys' fees in this case.

17  *See Enpalm, LLC*, 162 Cal. App. 4th at 774 ("In short, after determining the lodestar amount, the

18  court shall then consider whether the total award so calculated under all of the circumstances of

19  the case is more than a reasonable amount and, if so, shall reduce the section 1717 award so that it

20  is a reasonable figure.") (internal quotation marks omitted).  Accordingly, the court will award

21  plaintiff $1,394,298.50 in attorneys' fees and $10,345.51[17] in costs.

22  /////

23

---

24  [16]  Defendant does not argue that the lodestar amount should be reduced because plaintiff failed to
25  prevail on its declaratory relief claim.

26  [17]   As noted above, plaintiff requested attorneys' fees and costs but did not separately account for
the amount of costs incurred in litigating this action.  (Doc. No. 139 at 17.)  Because plaintiff did
27  not provide the amount of costs incurred, but did provide the supporting documentation, the court
has calculated this amount manually by reviewing plaintiff's invoices.  (Doc. No. 139-1 at 6, 10,
28  13, 16, 19, 22, 26, 30, 36, 40, 47, 50, 53, 56, 59, 62, 67, 70, 84, 94, 123, 128.)

**D.      Post-judgment Interest**

Plaintiff also seeks post-judgment interest on the damages awarded of $1,514,236.93,[18] as reflected in the judgment, at a statutory rate of 4.68%.  (Doc. No. 141 at 8.)  "Under 28 U.S.C. § 1961, the award of post[-]judgment interest on a district court judgment is mandatory."  *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir. 2013) (citing *Air Separation Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 289–90 (9th Cir. 1995)).  In its opposition, defendant appears to agree that plaintiff is entitled to post-judgment interest on the amount of $1,514,236.93.  (Doc. No. 146-1 at 2.)  Defendant also does not dispute the interest rate which applies.  Accordingly, the court will grant plaintiff's motion for post-judgment interest on the amount of $1,514,236.93 at the annual rate of 4.68%.

<b>CONCLUSION</b>

Accordingly,

1.      Plaintiff's motion for an award of attorneys' fees pursuant to California Civil Code § 1717 and Federal Rule of Civil Procedure 54(d) (Doc. No. 139) is GRANTED;

2.      Plaintiff is awarded attorneys' fees in the amount of $1,394,298.50 and is awarded costs in the amount of $10,345.51;

3.      Plaintiff's motion for post-judgment interest (Doc. No. 141) is GRANTED; and

4.      Plaintiff is awarded post-judgment interest on the amount of $1,514,236.93 in damages accruing at the applicable rate of 4.68% pursuant to 28 U.S.C. § 1961 to begin accruing from the date of entry of judgment.

IT IS SO ORDERED.

Dated:    **March 19, 2025**                               _____

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

---

[18]  This amount represents the damages awarded to plaintiff after the Ninth Circuit decision reduced that award by the amount of attorneys' fees and costs incurred in prosecuting this case: $1,146,337.24.  (Doc. No. 147 at 9.)